**UNITED STATES of America, Appellee,**

v.

**Marion HIGH BULL, Appellant.**

**No. 75–1797.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1976.

Decided April 6, 1976.

Ramon A. Roubideaux, Rapid City, S. D., for appellant.

Michael T. Milligan, Asst. U. S. Atty., El Paso, Tex. (William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief), for appellee.

Before LAY and HEANEY, Circuit Judges, and REGAN, District Judge.*

HEANEY, Circuit Judge.

Marion High Bull, an Indian, was convicted of the second-degree murder of his wife's six-year-old niece, Yvette Lone Hill, and the manslaughter of his wife's fifteen-month-old nephew, Floyd Bianas. Both killings occurred on the Pine Ridge Indian Reservation. He was sentenced to twenty years for the murder and ten years for the manslaughter, the sentences to run concurrently. He contends on appeal that the evidence was insufficient to sustain the convictions, that the court erred in denying his motion for a new trial because the prosecution made prejudicial remarks in its opening statement, and because the sentence imposed was excessive. We affirm the convictions.

The core of the defendant's argument is that the evidence is insufficient to show that either child died as a result of acts committed by him. He concedes that there is substantial evidence that Floyd and Yvette were battered, mistreated and neglected.

The record certainly establishes that Floyd was neglected and mistreated by persons other than the defendant. As a result of his mother's neglect, he was sent to live with the defendant and his wife, an arrangement which the Tribal authorities approved in the face of evidence that the defendant and his wife drank heavily and mistreated another child. The defendant's wife neglected and mistreated Floyd and may have, in a drunken stupor, dropped him on his head twice on the day that he died. A doctor at the Rushville, Nebraska, hospital, where Floyd was taken by the defend-

* JOHN K. REGAN, District Judge, Eastern District of Missouri, sitting by designation.

ant and his wife when he appeared to be dying, refused to treat Floyd because the High Bulls were not insured. But there is evidence to support the jury's verdict that the defendant was guilty of manslaughter. The record shows that the defendant frequently choked Floyd to the point of unconsciousness when he cried; frequently beat Floyd; and on Christmas, 1974, the date Floyd died, inflicted blows to Floyd's abdomen sufficient to rupture his liver, a blow which caused Floyd's death.

The defendant denies that he choked Floyd or that he struck him in the abdomen on December 25. He testified that he was drunk and fell on top of the baby twice on that day, and that these falls caused the liver injury. The jury obviously disbelieved this testimony and we cannot say that it erred in so doing. *See United States v. Henson*, 456 F.2d 1045 (8th Cir. 1972) (per curiam).

The record also establishes that Yvette was neglected by others, including her grandmother, mother and aunts. In fact, she voluntarily left her grandmother's house to live with the High Bulls. State authorities approved the arrangement and authorized the payment of welfare benefits to the High Bulls for keeping the child. It further establishes that Yvette was returned to her grandmother's home the day after Floyd died and stayed in that home until her death on December 28. It is clear from the record that Yvette was ill and required hospital treatment, and that the adult occupants of the grandmother's house knew the extent of her illness but failed to act. The only excuse given by them for failing to seek treatment was their acquiescence in the defendant's desire to get Yvette out of sight until after Floyd's funeral.

Again, however, the record adequately supports the jury's verdict that the defendant was guilty of the murder of Yvette. It shows that the defendant beat her with an axe handle frequently, breaking one arm and badly bruising both arms; that his beatings caused lacerations in the head and a broken rib cage; and that the beatings were so debilitating that Yvette died of pneumonia. In the words of the physician that conducted the autopsy:

[T]his little girl was completely debilitated * * * unable to care for herself * * * the trauma, the debilitation is completely, causing the pneumonia to be a fatal disease.

There is also evidence that the defendant admitted that he caused the death of the two children.

The defendant also vigorously argues that the malice necessary to sustain a conviction of second-degree murder was not shown. He cites testimony indicating that he had a reputation as a peaceful man of good character, that he was good to his wife and that he loved Floyd and Yvette. This and other evidence was considered by the jury pursuant to proper instruction by the court and rejected.

The defendant finally argues that it is unfair to hold him alone responsible for the violent deaths of Floyd and Yvette. It may indeed be unfair. The defendant's wife must share in the blame for the death of Floyd and Yvette. The wife's mother, sister and brothers must also accept some responsibility for failing to take Yvette to the hospital when it was clear that she was very ill. The Tribal Council and the State of South Dakota are not free from blame because they approved of Yvette's placement in the home of the defendant and his wife. The unnamed doctor at Rushville, Nebraska, certainly cannot rest easily if he is aware that the little Indian boy he refused to treat because the defendant was not insured died shortly thereafter. Indeed, even the Department of Interior and the Bureau of Indian Affairs should blush with shame at the picture of degradation and despair that emerges from the pages of this record.

Having revealed the unfairness, we can urge on all public officials the necessity to correct the unfairness and, more importantly, the conditions leading to the deaths. But we cannot absolve the defendant of his acts. His convictions must stand.

We find no merit to the defendant's claims that a mistrial should have been declared because of prejudicial statements by the prosecution in the opening argument and that the sentence was excessive.

Affirmed.